IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL № 1:09-cv-388

| | |
|---|---|
| THOMAS S. DARNALL, JR., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM IN SUPPORT |
| ) | OF MOTION TO COMPEL |
| THE CHARLES SCHWAB CORPORATION, ) | ARBITRATION AND TO |
| CHARLES SCHWAB & CO., INC., ) | STAY THIS ACTION |
| and CHARLES SCHWAB INVESTMENT ) | |
| MANAGEMENT, INC., ) | |
|     Defendants. ) | |

    Defendant Charles Schwab & Co., Inc. ["Schwab"], Defendant The Charles Schwab Corporation ["the Schwab Corporation"], and Defendant Charles Schwab Investment Management, Inc. ["Schwab Management"] submit this Memorandum in support of their Motion to Compel Arbitration and Stay this Action. As discussed below, the written arbitration provision in the Plaintiff's IRA Agreement, as originally written and as thereafter amended, is valid and enforceable. Further, this broadly-worded arbitration provision, as originally written and as thereafter amended, clearly embraces the facts underlying the Plaintiff's claims in this action or, in the alternative, encompasses the Plaintiff's claims because of the "significant relationship" between the Plaintiff's claims and the Plaintiff's Schwab IRA Account agreement. Finally, the Court should order arbitration of not only the Plaintiff's claims against Schwab but also the

1

Plaintiff's claims against Schwab's parent and affiliate co-defendants, given that such claims are based upon the exact same facts, are inherently inseparable, and are in fact the same claims.

STATEMENT OF FACTS AND ALLEGATIONS

In January 1983, the Plaintiff, Thomas Darnall ["Darnall"], and Schwab entered a "Form A IRA Adoption Agreement" establishing a Schwab IRA Account for Darnall ["the 1983 IRA Agreement"]. (Affidavit of Mila Dunn ["Dunn Affidavit", Exhibit B.) The 1983 IRA Agreement adopted the Schwab Individual Retirement Plan then in effect and expressly made that Plan and its provisions part of the agreement. (Dunn Affidavit, Exhibit B.) Thereby, the 1983 IRA Agreement adopted the Plan's choice of law provision, designating federal law and California law as controlling, and a provision authorizing Schwab to amend or terminate the Plan provisions incorporated into the Agreement. (Dunn Affidavit, Exhibit A, Sections 8.1 & 10.3.) In addition, the 1983 IRA Agreement adopted and included a broad arbitration provision, reading as follows:

> "Any disputes which may arise relating to any participant's Account shall be settled by binding arbitration in accordance with the rules of the National Association of Securities Dealers."

(Dunn Affidavit, Exhibit A, Section 10.7 & Exhibit B.)

In March 2005, Schwab provided Darnall written notice of an IRA Account Agreement amendment ["the 2005 IRA Amendment"], which provided, in part, as follows:

> "Any controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, an instruction or authorization provided to Schwab or the breach of any such agreements, instructions, or authorizations; (ii) the Account, any other Schwab account or Services; (iii) transactions in the Account or any other Schwab account; (iv) or in any way arising from the relationship with Schwab, its parent, subsidiaries, affiliates, officers, directors, employees or agents or service providers, including any controversy over the arbitrability of a dispute, will be settled by arbitration."

(Affidavit of Kevin Matthews ["Matthews Affidavit"], #1-#6 & Exhibit D; see also Dunn Affidavit, Exhibit C.)

Over time, Darnall held Federal Home Loan notes and various publicly trade securities in his IRA Account. (Complaint #5; Matthews Affidavit, Exhibit E.) In March and April 2007, Darnall invested more than $600,000.00 of IRA Account funds in select shares of Schwab's YieldPlus Fund (Nasdaq: SWYSX). (Complaint #12.)

On September 10, 2009, Darnall filed this action against Schwab; Schwab's parent, the Schwab Corporation; and Schwab's affiliate, Schwab Management, in the Superior Court of Henderson County, North Carolina. (Complaint #2-#4.) In the Complaint, Darnall alleged that Schwab induced Darnall's purchase of the YieldPlus Fund shares by its recommendations, misrepresentations, nondisclosures, and account mismanagement.

3

(Complaint #7-#20.) Based upon Schwab's alleged conduct, Darnall brought claims against all three Defendants for fraud, constructive fraud, negligent misrepresentation, breach of fiduciary duty, and negligent mismanagement of account. (Complaint #22-#52.)

On October 16, 2009, the Defendants removed this action to the U.S. District Court for the Western District of North Carolina, while expressly reserving their right to move to compel arbitration and stay this action.[1]

ARGUMENT

I. UNDER THE FEDERAL ARBITRATION ACT, THE WRITTEN ARBITRATION PROVISIONS IN THE 1983 IRA AGREEMENT AND THE 2005 IRA AMENDMENT ARE VALID AND ENFORCEABLE.

The Federal Arbitration Act ("FAA") provides, in pertinent part, that "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA further provides that upon application, District Courts shall enter orders directing parties to proceed with arbitration in the manner provided by their agreement and

---

[1] Defendants do not waive an arbitration agreement by removing a state court action to federal court and filing an Answer, unless the Plaintiff is actually prejudiced by the Defendants' active participation in litigation or by loss of evidence. In re Mercury Construction Corp., 656 F.2d 933 (4th Circuit (N.C.) 1981); Garner Lumber Co. v. Randolph E. Valensi, Lange, Inc., 393 F.Supp. 161 (W.D.N.C. 1974, aff'd 513 F.2d 1171 (4th Circuit 1975).

4

staying the action pending completion of such arbitration. 9 U.S.C. §§ 3-4.

The 1983 IRA Agreement expressly adopted and included a broad, written arbitration provision, requiring the arbitration of "[a]ny disputes … relating to any [Schwab] Account." (Dunn Affidavit, Exhibit A, Section 10.7 & Exhibit B.)

Pursuant to the express provisions of the 1983 IRA Agreement, Schwab amended the arbitration provision of the IRA Account Agreement by the 2005 IRA Amendment.[2] (Matthews Affidavit, #1-#6 & Exhibit D; Dunn Affidavit, #5 & Exhibit C.) As amended, the broad, written arbitration provision requires arbitration of "[a]ny controversy or claim arising out of or

---

[2] The 1983 IRA Agreement provides that California law applies and governs the Plan provisions incorporated into the agreement, including the modification provision, to the extent that federal laws do not apply. (Dunn Affidavit, Exhibit A, Section 10.3.) Under California law, "[a] contract in writing may be altered by contract in writing." CA Civil Code § 1698(a); see also Busch v. Globe Industries, 200 Cal.App.2d 315, 320, 19 Cal.Rptr. 441 (1962). In addition, under California law, a party may modify a contract in accordance with any contract provision authorizing such modifications, and such modifications do not constitute an "alteration" of the contract. Busch v. Globe Industries, 200 Cal.App.2d at 320. In this instance, the 1983 IRA Agreement expressly provided that Schwab could modify the Plan provisions adopted into and made a part of the agreement, including the arbitration provision, (Dunn Affidavit, Exhibit A, Section 10.7.), and Schwab therefore effected a valid modification of the arbitration provision by the 2005 IRA Amendment. Moreover, Darnall manifested his assent to these March 2005 amendments by undertaking the investment transactions at issue in this action, in March and April 2007, after receiving full notice of such amendments. 17 AmJur2d, Contracts § 96 (acceptance may be implied from acts or conduct). (Matthews Affidavit, #4-#6 and Exhibits D-E; Complaint #12.)

5

relating to" any agreement with Schwab, any Schwab account, or transactions in any Schwab account, and arbitration of "[a]ny controversy or claim … in any way arising from the relationship with Schwab, its parent, subsidiaries, affiliates, … agents or service providers…."  Pursuant to the FAA, the written arbitration provision in the Plaintiff's IRA Agreement with Schwab, as originally stated and as amended in 2005, is valid and enforceable under the FAA.

Under California law and the facts in this action, the arbitration provision in the 2005 IRA Amendment constitutes the parties' arbitration agreement in this case.  However, the analysis below demonstrates that, under federal law as delineated by the Fourth Circuit Court of Appeals, the parties' arbitration agreement requires arbitration of all the Plaintiff's claims against all the Defendants in this action, regardless of whether the Court looks to the original provision in the 1983 IRA Agreement or the revised provision in the 2005 IRA Amendment.

II. THE BROAD ARBITRATION PROVISIONS IN THE 2005 IRA AMENDMENT AND IN THE 1983 IRA AGREEMENT EMBRACE ALL PLAINTIFF'S TORT CLAIMS IN THIS ACTION, GIVEN THE SIGNIFICANT RELATIONSHIP BETWEEN PLAINTIFF'S CLAIMS AND THE SCHWAB IRA ACCOUNT ESTABLISHED AND GOVERNED BY THE IRA AGREEMENT.

To determine whether an arbitration agreement encompasses a claim, the "court must determine whether the factual allegations underlying the claim are within the scope of the arbitration

6

clause, regardless of the legal label assigned to the claim." J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Circuit 1988).

Federal policy favors arbitration. Long v. Silver, 248 F.3d 309, 316 (4th Circuit 2001). Therefore, in determining the scope of an arbitration agreement, the Fourth Circuit Court of Appeals has held that a court must read and construe arbitration agreements liberally, in favor of arbitration, as follows:

> "The … Federal Arbitration Act 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or allegations of waiver, delay, or a like defense of arbitrability.' To that end, 'the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.' Thus, we may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"

Long v. Silver, 248 F.3d at 316 (4th Circuit 2001) (citations omitted); accord Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 569 & 571 (4th Circuit 1998).

In this action, the facts underlying Darnall's claims clearly fall within the scope of the written arbitration provisions in the 1983 IRA Agreement and the 2005 IRA Agreement. By their express terms, the arbitration provisions in the 1983 IRA Agreement and the 2005 IRA Amendment both embrace *all disputes relating to Darnall's Schwab IRA Account*. In this

7

action, Darnall bases all his claims *upon IRA Account transactions* allegedly undertaken in reliance upon Schwab's recommendations, representations, nondisclosures, and account mismanagement — claims plainly relating to Darnall's Schwab IRA Account.

In the event of any question whether the scope of the arbitration provisions in the IRA Agreements extends to these tort claims, the Fourth Circuit Court of Appeals has held that:

> "[A] broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained."

<u>Long v. Silver</u>, 248 F.3d at 316 (citation omitted) (holding fraud, breach of fiduciary duty, civil conspiracy, and unfair trade acts claims significantly related to the "1999 Agreement," which required arbitration of "any dispute arising out of or relating to this Agreement or the breach, termination or validity thereof").

Manifestly, the arbitration provision in the 2005 IRA Amendment is "broadly-worded," as it applies to *any* disputes relating to *any* Schwab agreement, *any* Schwab account, *any* transaction in a Schwab account, or the *relationship* with Schwab or *any* Schwab parent, affiliate, or agent. Likewise, the 2005 IRA Amendment is also a "broadly-worded" arbitration provision triggering the "significant relationship" test. First, the

8

arbitration provision in the 2005 IRA Amendment uses the expansive modifier "relating to." See J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Circuit 1988) (An arbitration clause covering all "disputes arising in connection with the present contract" encompasses a "broad scope of arbitrable issues" and "embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute."); Smith v. Cato, 2006 WL 1285521, *3 & *6 (W.D.N.C. 2006) (clause requiring arbitration of any dispute "related to this Agreement" was "broadly-worded" and triggered the "significant relationship" test) (unpublished; attached). Second, the arbitration provision in the 1983 IRA Agreement expressly applies to any dispute relating to *any Schwab account* — a scope much broader than a provision merely applying to disputes relating to the agreement or its breach.

Again, Darnall has premised all his claims upon transactions undertaken in his Schwab IRA Account, allegedly in reliance upon Schwab's recommendations, representations, and account management. The 1983 IRA Agreement established Darnall's Schwab IRA Account, and the terms of the 1983 IRA Agreement and the 2005 IRA Amendment governed the account and the transactions in such account. Clearly, Darnall's tort claims arising from these IRA Account transactions are

9

significantly related to the 1983 IRA Agreement and the 2005 IRA Amendment governing such account.

Accordingly, all Darnall's claims in this action fall within the scope of the broadly-worded arbitration provisions in the 1983 IRA Agreement and the 2005 IRA Amendment.

III. EVEN THOUGH SCHWAB'S PARENT AND AFFILIATE CO-DEFENDANTS ARE NOT FORMALLY PARTIES TO PLAINTIFF'S ARBITRATION AGREEMENT WITH SCHWAB, THE COURT SHOULD ORDER ARBITRATION OF THE CLAIMS AGAINST THESE CO-DEFENDANTS SINCE THE CLAIMS AGAINST ALL DEFENDANTS ARE BASED ON THE EXACT SAME FACTS AND ARE INHERENTLY INSEPARABLE AND SINCE PLAINTIFF BASES ALL CLAIMS UPON AN ALLEGED AGENCY RELATIONSHIP BETWEEN SCHWAB AND ITS CO-DEFENDANTS.

Two of the Defendants, the Schwab Corporation and Schwab Management, did not sign the 1983 IRA Agreement or issue the 2005 IRA Amendment thereto. However, the Schwab Corporation is the parent corporation of Schwab, and Schwab Management is an affiliate of Schwab. (Complaint #2 & #4.) Moreover, Darnall's claims against the Schwab Corporation and Schwab Management are based on the exact same facts as, and are inherently inseparable from, the claims against Schwab. (Complaint #5-#52.) Further, Darnall makes no specific or definite allegation concerning any conduct by Schwab's Co-Defendants and, instead, predicates his claims against the Co-Defendants upon an alleged agency relationship between Schwab and the Co-Defendants. (Complaint #2-#4.)

The 2005 IRA Amendment expressly requires arbitration of "*[a]ny* controversy or claim … *in any way arising from the*

10

*relationship with Schwab, its parent, … affiliates,* … agents or service providers." Thus, the arbitration provision in the 2005 IRA Amendment mandates arbitration of Darnall's claims against not only Schwab but also its parent, the Schwab Corporation, and its affiliate, Schwab Management.

Even disregarding that particular subpart of the arbitration provision in the 2005 IRA Amendment, it is proper for the Court to order Darnall's claims against the Schwab Corporation and Schwab Management to arbitration, given the Plaintiff's arbitration agreement with Schwab in the 2005 IRA Amendment or, alternatively, in the 1983 IRA Agreement. In particular, the Fourth Circuit Court of Appeals has upheld like referrals, as follows:

> "When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement. … 'If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.'"

J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-321 (4th Circuit 1988); see also Long v. Silver, 248 F.3d 309, 319-320 (4th Circuit 2001) (non-signatory shareholders could compel arbitration of Plaintiff's claims, in part for the reasons discussed in *J.J. Ryan & Sons, Inc.*); James C. Greene Company v. Great American E&S Insurance Company, 321 F.Supp.2d

717, 719-720 (E.D.N.C. 2004) (discussing and applying the "intertwined claims" exception, entitling non-signatory to benefits of arbitration agreement).

In addition, without conceding or acknowledging any agency relationship or vicarious liability, the Defendants note that Darnall's claims against Schwab's Co-Defendants are dependent upon their alleged agency relationship with Schwab. Therefore, Darnall should be equitably estopped to oppose referral of his claims against all Defendants to arbitration in accordance with the arbitration agreement with Schwab, under general principles of agency law. Long v. Silver, 248 F.3d 309, 320 (4th Circuit 2001) ("A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract."); James C. Greene Company v. Great American E&S Insurance Company, 321 F.Supp.2d at 720 (holding non-signatory entitled to protection of arbitration provision under "agent theory" exception).

In this action, the claims against all three Defendants are based on the exact same facts, are inherently inseparable, and are in fact the exact same claims. Failing to refer the claims against the Schwab Corporation and Schwab Management to arbitration would render the arbitration between Schwab and Darnall meaningless and would thwart the federal policy in favor of arbitration. Further, the fact that Darnall premises the claims against these other Defendants on an agency relationship

12

with Schwab supports enforcement of the arbitration provision in their favor. Accordingly, the Court should order all claims against all three Schwab Defendants to arbitration.

CONCLUSION

For the foregoing reasons, the Defendants respectfully move the Court to order arbitration of all Plaintiff's claims in this action in accordance with the terms of the 2005 IRA Amendment and, alternatively, in accordance with the terms of the original, unamended 1983 IRA Agreement; specifically, by ordering arbitration in the forum provided by FINRA, the Financial Industry Regulatory Authority (successor by merger of NASD), or, in the alternative, in the forum provided by AAA. (Affidavit of Sean Meehan; Matthews Affidavit, Exhibit D; Dunn Affidavit, #3-#7 & Exhibits A, C, & F.) Further, the Defendants respectfully move the Court to stay this action pending completion of such arbitration.

This the 9th day of November, 2009.

>s/Philip S. Anderson
>Philip S. Anderson
>NC State Bar #21323
>Attorney for Defendants
>Long, Parker, Warren, Anderson & Payne, P.A.
>P.O. Box 7216
>Asheville, NC 28802
>Telephone: 828-258-2296
>Facsimile: 828-253-1073
>Email: philip@longparker.com

CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that I have this day served a copy of this memorandum in the manner prescribed by Rule 5 of the Federal Rules of Civil Procedure, by ECF filing and by placing the copy in the U.S. mail in a postpaid envelope properly addressed as follows:

Stephen J. Grabenstein
11 North Market Street
Asheville, NC  28801

THIS the 9th day of November, 2009.

>s/Philip S. Anderson
>Philip S. Anderson
>NC State Bar #21323
>Attorney for Defendants
>Long, Parker, Warren, Anderson & Payne, P.A.
>P.O. Box 7216
>Asheville, NC 28802
>Telephone: 828-258-2296
>Facsimile: 828-253-1073
>Email: philip@longparker.com